OPINION
{¶ 1} Appellant Brian Taylor appeals from the November 15, 2005, Judgment Entry of the Tuscarawas County Court of Common Pleas, Juvenile Division.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant Brian Taylor, who is a Native Alaskan (Indian) of the Deering Tribe, is the father of Kelsey Taylor (DOB 4/11/94) and Kyle Taylor (DOB 1/7/96). Appellee Michelle Taylor is the children's mother. A Decree of Dissolution of the parties' marriage was filed in the Superior Court for the State of Alaska on February 27, 2002. The Decree did not determine custody of the children since appellant was unable to determine the whereabouts of appellee Michelle Taylor.
 {¶ 3} On August 25, 2005, a complaint was filed in the Tuscarawas County Court of Common Pleas, Juvenile Division, alleging that the two children were neglected and dependent children. The two children, who had been residing with appellee and her husband in Ohio, were placed in the temporary custody of the Tuscarawas County Department of Job and Family Services.
 {¶ 4} An adjudicatory hearing was scheduled for September 20, 2005, and a dispositional hearing was scheduled for October 19, 2005.
 {¶ 5} On September 19, 2005, a Notice of Intervention was filed by the Tribal Administrator for the Native Village of Deering, Alaska pursuant to the Indian Child Welfare Act of 1978,25 U.S.C. 1901 et seq. The Tribal Administrator, in her notice, alleged that the two children were "eligible for membership in the Native Village of Deering, Alaska and are natural children of a member of the Tribe." The Tribal Administrator further stated in her notice that the tribe had the right to intervene in child custody proceedings involving Indian children.
 {¶ 6} On September 20, 2005, appellant filed a motion for a continuance of the September 20, 2005 adjudicatory hearing. As memorialized in a Judgment Entry filed on September 21, 2005, the trial court continued the adjudicatory hearing until October 19, 2005. The Tribal Administrator was mailed a copy of such entry.
 {¶ 7} Thereafter, on October 7, 2005, the Deering IRA Council, through its "non-attorney representative", filed a Petition to Transfer Jurisdiction to the Deering Tribal Court pursuant to 25 U.S.C. 1911(b) of the Indian Child Welfare Act. The Deering IRA Council, in its petition, alleged, in relevant part, as follows:
 {¶ 8} "1. The above minor children were placed in the temporary legal and physical custody of the state of Ohio Department of Family and Youth Services through a child custody proceeding on August 24, 2005.
 {¶ 9} "2. These Children Kelsey and Kyle Taylor are members of the Native Village of Deering and these proceedings are therefore subject to the provision of the ICWA, 25, U.S.C. 1903 et. seq.
 {¶ 10} "3. Petitioner is an Alaskan Native Tribe recognized by the United States.
 {¶ 11} "4. Petitioner is a tribal court as defined by ICWA.
 {¶ 12} "5. The Deering IRA Council is prepared to provide for the physical and emotional health and development of the minor children.
 {¶ 13} "6. The decisions regarding these children can best be made by petitioner.
 {¶ 14} "7. It is in the best interests of the children for these proceedings to be transferred to petitioner."
 {¶ 15} Pursuant to a Judgment Entry filed on October 19, 2005, the adjudicatory and dispositional hearings were continued until October 25, 2005, because appellant had not received timely discovery. The Native Village of Deering was mailed a copy of such Judgment Entry.
 {¶ 16} On October 25, 2005, appellant filed a Motion and Petition to Transfer Jurisdiction to the Deering Tribal Court pursuant to 25. U.S.C. section 1911 (a). (As noted above, the Derring IRA Council had filed its petition pursuant to section 1911(b).) Appellant, in his motion, alleged that his two children were "legally domiciled with the Deering Tribe" in Alaska. On the same date, appellee filed an "Objection to the Transfer of Jurisdiction to the Deering Tribal Court" under25 U.S.C. 1911(b). Appellee, in her objection, alleged that the two children had been domiciled in the State of Ohio for the past eight years and had not had any contact with appellant and that she had left appellant and moved to Ohio after appellant physically abused her. Appellee's Certificate of Service reveals that a copy of her October 25, 2005 objection was not served on the Native Village of Deering.
 {¶ 17} At the adjudicatory hearing on October 25, 2005, appellee and appellant both admitted that the two children were dependent children and the trial court, via a Judgment Entry filed on October 26, 2005, found them to be dependent. The trial court, in its entry, set a hearing on the issue of transfer of jurisdiction to the Deering Tribal Court for November 3, 2005 and set a dispositional hearing for November 21, 2005. The Native Village of Deering was served with a copy of the trial court's entry.
 {¶ 18} On November 2, 2005, appellant filed an addendum to his Motion and Petition to Transfer Jurisdiction to the Deering Tribal Court and a response to appellee's objection to the transfer. Appellant, in his response, argued, in part, as follows:
 {¶ 19} "PART A(i) — The Court must over rule and deny the Mother's Objection to transfer jurisdiction to the Native Village of Deering, Deering Tribal Council/Court as that Party to this action was not provided a copy of the Objection. They were not otherwise notified according to the Proof of service on the Objection filed October 25, 2005. The failure to provide the tribal court with a copy of this Objection denies them the ability to respond and protect their interest in this matter. That Party is entitled to a copy of any document or report filed in this Court. See, e.g., 25 USC 1912(c)."
 {¶ 20} A copy of appellant's addendum and objection response was mailed to the Deering IRA Council on November 2, 2005. On November 3, 2005, appellee filed a "Response in Opposition to Father's Petition to Transfer case to Tribal Court."
 {¶ 21} As indicated in a Certificate of Service filed on November 3, 2005, appellee mailed the Deering IRA Council a copy of her October 25, 2005 objection on November 3, 2005 via ordinary mail.
 {¶ 22} A hearing was held before the trial court on November 3, 2005. Pursuant to a Judgment Entry filed on November 15, 2005, the trial court denied both petitions to transfer jurisdiction to the Deering Tribal Council. A copy of the trial court's entry was served on the Deering Tribal Council.
 {¶ 23} Appellant now raises the following assignments of error on appeal:
 {¶ 24} "1. THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND/OR ABUSED ITS DISCRETION BY FAILING TO GIVE FULL FAITH AND CREDIT TO THE NATIVE VILLAGE OF DEERING I.R.A. COUNCIL AND TRIBAL COURT PUBLIC ACTS, RECORDS AND JUDICIAL PROCEEDINGS AS REQUIRED BY25 U.S.C. 1911.
 {¶ 25} "2. THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND/OR ABUSED ITS DISCRETION BY FAILING TO RELINQUISH JURISDICTION OF THIS INDIAN CHILD CUSTODY PROCEEDING TO THE NATIVE VILLAGE OF DEERING, ALASKA I.R.A. TRIBAL COURT AS REQUIRED BY25 U.S.C. 1911.
 {¶ 26} "3. THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN RENDERING A DECISION AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND/OR ABUSED ITS DISCRETION IN DECIDING THE MATTER AGAINST THE SOLE EVIDENCE PRESENTED."
 I, II, III {¶ 27} Appellant, in his three assignments of error, argues that the trial court erred in denying his petition to transfer jurisdiction to the Native Village of Deering. Appellant argues, in part, that the trial court's decision not to transfer jurisdiction was against the manifest weight of the evidence. We disagree.
 {¶ 28} As an initial matter, we note that appellant argues that the Deering Tribe's due process rights were violated since appellee failed to timely notify the tribe of her October 25, 2005 objection to its transfer petition. Appellant notes that the Proof of Service for appellee's objection "fails to include the Native Village of Deering, the party to whom the Objection was directed." However, we find that appellant lacks standing to raise such issue on behalf of the Deering Tribe. We note that the Deering Tribe filed a Notice of Intervention in the trial court, received copies of the trial court's entries setting hearings, and, after the trial court denied its petition to transfer jurisdiction, did not appeal. Appellant, therefore, cannot do so now on the tribe's behalf.[1]
 {¶ 29} Thus, the only issue for determination is whether the trial court erred in failing to transfer jurisdiction to the Deering Tribe pursuant to the Indian Child Welfare Act [ICWA]. The Indian Child Welfare Act was enacted in 1978 in response to increasing concern over the large number of Native American children who were being placed in non-Native American foster or adoptive homes. See Section 25 U.S.C. Section 1901(4). The Indian Child Welfare Act provides, in 25 U.S.C. Section 1902, as follows: "[i]t is the policy of this Nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture[.]
 {¶ 30} "The gist of the ICWA is to protect the survival of Indian tribes by insuring that the tribes' offspring, the children of Indians, normally will not be removed from their Indian homes, their Indian heritage, their tribes, or their reservations." In Interest of K.A.W. (1992), 2 Okla. Trib. 338, 349, 1992 WL 752134 (Comanche Child. Ct.). The Indian Child Welfare Act applies to any "child custody proceeding" concerning an "Indian child." See 25 U.S.C. sections 1903(1)(ii) and (4).
 {¶ 31} Section 1911 of ICWA sets forth the jurisdictional rights of Indian tribes. 25 U.S.C. Section 1911 states as follows:
 {¶ 32} "(a) Exclusive jurisdiction
 {¶ 33} "An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law. Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child.
 {¶ 34} "(b) Transfer of proceedings; declination by tribal court
 {¶ 35} "In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: Provided, That such transfer shall be subject to declination by the tribal court of such tribe.
 {¶ 36} "(c) State court proceedings; intervention
 {¶ 37} "In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe shall have a right to intervene at any point in the proceeding.
 {¶ 38} "(d) Full faith and credit to public acts, records, and judicial proceedings of Indian tribes. The United States, every State, every territory or possession of the United States, and every Indian tribe shall give full faith and credit to the public acts, records, and judicial proceedings of any Indian tribe applicable to Indian child custody proceedings to the same extent that such entities give full faith and credit to the public acts, records, and judicial proceedings of any other entity." (Emphasis added).
 {¶ 39} In the case sub judice, the parties do not dispute that the two minor children are Indian children, that they do not reside on the reservation of the Deering Tribe and that the matter at issue is a child custody proceeding. Nor do the parties dispute that the Native Village of Deering is an Indian Tribe. What is at issue, however, is whether or not the two minor children were domiciled on the reservation. If the children were so domiciled, then the Deering tribe has exclusive jurisdiction. However, if the children were not domiciled, then, pursuant to25 U.S.C. Section 1911(b), the tribe does not have exclusive jurisdiction.
 {¶ 40} In Mississippi Band of Choctow Indians v. Holyfield
(1989), 490 U.S. 30, 109 S.Ct. 1597, the United States Supreme Court noted that while the term "domicile" as used in25 U.S.C. Section 1911 was not statutorily defined, Congress clearly intended for there to be a uniform rather than state law definition for such term. The United States Supreme Court further held that, in order to determine the definition of the term domicile, it was necessary to look to the generally accepted meaning of such term and to the purpose of the Indian Child Welfare Act.
 {¶ 41} The United States Supreme Court, in Holyfield, noted that it was generally uncontroverted that "domicile" is not necessarily synonymous with "residence" and that one can reside in one place but be domiciled in another. The Court noted that, in the case of adults, "domicile is established by physicalpresence in a place in connection with a certain State of mind concerning one's intent to remain there." Id. at 48. (Emphasis added). Because most minors are legally incapable of forming the requisite intent to establish a domicile, however, their domicile is usually determined by that of their parents. Id. Traditionally, in the case of children born out of wedlock, the child takes the domicile of the mother. Holyfield,490 U.S. at 48.
 {¶ 42} We concur with the trial court that appellant had failed to provide evidence of his domicile. While appellant refers in his brief to an affidavit which he asserts demonstrates that his domicile is on the reservation, this Court has been unable to locate any affidavits in the trial court file. Rather, what is in the court file is an undated and unsigned document purportedly from appellant stating, in part, that "[a]s an Alaska Native residing in Fairbanks and a permanent member of the tribe whose domicile is the Native Village of Deering Alaska I feel it is imperative that Kelsey and Kyle (members of this tribe) are aware, participate and became familiar with their native heritage and culture." Nor was there any testimony from appellant with respect to such issue. As noted by the trial court in its November 15, 2005, Judgment Entry, "statements of counsel and allegations in a petition are not evidence."
 {¶ 43} Furthermore, as noted by the trial court in its November 15, 2005, Judgment Entry, in order for appellant to prevail under 25 U.S.C. Section 1911(a), appellant had to show the trial court that he, and therefore his children, were domiciled on tribal lands.[2] There is no dispute in the case sub judice that appellant did not reside on tribal lands. Appellant, therefore, was not physically present on reservation lands with an intention to remain there, See Holyfield, supra. Rather, appellant's alleged evidence shows that appellant resides in Fairbanks, Alaska where he has a job. While appellant contends that his children are members of the Native Village of Deering and that, this alone, establishes their domicile for ICWA purposes, appellant does not cite, and this Court is unaware of, any legal support for such proposition. Nor is this court aware of any case law holding that enrollment in an Indian tribe equates to domicile on tribal lands. Since, based on foregoing, neither appellant nor appellee, the children's parents, were domiciled on the reservation, the minor children, likewise, were not domiciled on the reservation.[3]
 {¶ 44} As is stated above, 25 U.S.C. Section 1911(b) states, in relevant part, as follows: "In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian of the Indian child's tribe . . ." Appellee has objected to the transfer of jurisdiction. We find that the plain language of Section 1911(b) of the statute gives her, as natural parent, a veto right over a request to transfer jurisdiction to the tribal court. In re Spang (1995), Muskingum App. No. 95-2,1995 WL 776051, at 2 (holding that mother's express objection to transfer was "sufficient under the statute to negate the transfer").
 {¶ 45} Based on the foregoing, we find that the trial court did not err in denying appellant's petition to transfer jurisdiction to the Native Village of Deering. We further find that the trial court's decision was not against the manifest weight of the evidence.
 {¶ 46} Appellant's three assignments of error are, therefore, overruled.
 {¶ 44} Accordingly, the judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division, is affirmed.
Edwards, J. Hoffman, P.J. and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Tuscarawas County Court of Common Pleas, Juvenile Division is affirmed. Costs assessed to appellant.
[1] See, for example, R.B. v. State Dept. of Human Resources
(Ala.Civ.App. 1995), 669 So.2d 187, in which parents, who appealed from a judgment denying their petition to terminate their parental rights to two adopted children, sought to raise on appeal the trial court's denial of an Indian tribe's motions to intervene and transfer jurisdiction pursuant to the Indian Child Welfare Act. The appellate court, however, held that the parents could not assert such issue because the tribe had not appealed the trial court's judgment.
[2] It is undisputed that appellee, the mother of the children, was not domiciled on tribal lands.
[3] As noted by the trial court in its November 15, 2005 Judgment Entry, since the "Tribal Counsel does not cite section [25 U.S. 1911](a) in its request, the Court assumes that this entity recognized that Mr. Taylor [appellant] was not domiciled on tribal lands . . ."